**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| BENJAMIN R. | : | |
| | : | |
| v. | : | NO. 25-CV-1033 |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security | : | |
| | : | |

**O P I N I O N**

SCOTT W. REID                                                    DATE:  March 27, 2026
UNITED STATES MAGISTRATE JUDGE

Benjamin R. brought this action under 42 U.S.C. §405(g) to obtain review of the decision

of the Commissioner of Social Security denying his claims for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI").  He has filed a Request for Review to which

the Commissioner has responded.  As explained below, I conclude that the Request for Review

should be granted in part and the matter remanded for review of the records pertaining to

Benjamin R.'s physical impairments by an independent consulting medical expert.

I.      *Factual and Procedural Background*

Benjamin R. was born on July 2, 1971.  Record at 235.  He completed the eleventh grade

in school.  Record at 349.  He worked in the past as a packer and machine operator at the

medium exertional level.  Record at 65, 349.  On September 3, 2022, Benjamin R. filed an

application for SSI, and on September 7, 2022, he filed one for DIB.  Record at 235, 261.  In his

applications, he alleged disability since May 10, 2015, as a result of psoriatic arthritis,

hypertension, herniated discs at L4-5 with a spinal cord stimulator implanted, bowel obstruction

and surgery for hernia repair, hypothyroidism, glaucoma, vertigo, and depression.  Record at

235, 261, 348.  He later amended his disabled date to July 2, 2021.  Record at 35.

Benjamin R.'s applications for benefits were denied on January 18, 2023.  Record at 95, 104.  They were denied once again upon reconsideration on May 12, 2023.  Record at 113, 134.  Benjamin R. then sought review *de novo* before an Administrative Law Judge ("ALJ").  Record at 161.

A hearing was held in this matter on February 13, 2024.  Record at 31.  On April 22, 2024, however, the ALJ issued a written decision denying benefits.  Record at 14.  The Appeals Council denied review, permitting the ALJ's decision to stand as the decision of the Commissioner for Social Security.  Record at 1.  Benjamin R. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s)

that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ determined that Benjamin R. suffered from the severe impairments of dermatitis, depression, anxiety, psoriatic arthritis, and degenerative disc disease of the lumbar spine. Record at 17. After this, he oddly wrote:

Although psoriatic arthritis, hypertension, herniated discs at L4-5, bowel obstruction and surgery for hernia repair, hypothyroidism, glaucoma, vertigo and depression are alleged by the claimant, there is no evidence in the file to support these conditions as medically determinable impairments as the conditions have not been diagnosed on the basis of any medically acceptable clinical or laboratory diagnostic technique.

*Id*. Thus, the ALJ found that Benjamin R.'s psoriatic arthritis, disc disease, and depression, both were and were not severe impairments. This is discussed further, below.

The ALJ then found that no impairment, and no combination of impairments, met or medically equaled one of the listed impairments. *Id*.

The ALJ determined that Benjamin R. retained the RFC to perform light work with the following limitations:

> [H]e can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit, stand, or walk for 6 hours each per 8-hour workday; he can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl; he cannot climb ladders, ropes, or scaffolds; frequent handling, fingering, feeling right upper extremity; no push/pull bilateral lower extremities; no concentrated exposure to extreme cold, vibration, fumes, dusts, gases, odors, poor ventilation, unprotected heights, moving machine parts; limited to simple, repetitive, routine tasks; he cannot work at production rate pace; occasional interaction with coworkers and supervisors.

Record at 19.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ concluded that Benjamin R. could not return to his prior work but could work in such jobs as mail clerk, stock checker, and price marker. Record at 24. He decided, therefore, that Benjamin R. was not disabled. Record at 24-5.

In his Request for Review, Benjamin R. argues that the ALJ erred by failing to consider a number of impairments which were identified as severe by ALJ Sharon Zanotto, who issued a decision in one of his earlier applications for benefits. He further maintains that the ALJ wrongly evaluated the medical evidence, citing selective evidence in support of his decision.

V.    *Discussion*

I.    *ALJ Zanotto's Decision*

The Record contains a copy of the December 29, 2021, decision authored by ALJ Sharon Zanotto, who denied an earlier application filed by Benjamin R. Record at 69. In her decision, ALJ Zanotto decided that Benjamin R. suffered from these severe impairments: psoriasis, psoriatic arthritis, Dupuytren's Contracture in the fourth and fifth fingers of the right hand, osteoarthritic changes in the first MTP joint of the right foot, subluxation of the second PIP joint, small posterior calcaneal spur of the left foot, and depressive disorder. Record at 74.

Benjamin R. complains that the ALJ in his present case did not investigate the impairments found by Zanotto (other than the depression and psoriatic arthritis), and "did not even make an effort to obtain the medical evidence that ALJ Zanotto relied upon in her decision." Request for Review at 7.

There is no merit to this argument. In this case, Benjamin R. did not allege disability on the basis of Dupuytren's Contracture, nor did he make specific complaints of a spur in his left foot or arthritis in his right foot. Record at 348. He did not testify as to these ailments. The ALJ questioned Benjamin R. about his diagnosed carpal tunnel syndrome and De Quervain's syndrome in the right hand, even though these conditions were not mentioned in his application, but Benjamin R. did not mention any other hand impairment. Record at 49. Even now, Benjamin R. has not cited any record evidence showing that the unmentioned conditions significantly limited his ability to work.

The case Benjamin R. cites, *Osborne v. Colvin*, Civ. A. No. 13-4400, 2014 WL 5410085 (E.D. Pa. Oct. 24, 2014), is clearly distinguishable. It concerned the reinstatement of benefits which were terminated because of the claimant's incarceration, and the court therefore relied upon *Wooten v.* Astrue, Civ. A. No. 11-7592, 2012 WL 6601397 at *1 (E.D. Pa. Dec. 17, 2012), where it was held in the same circumstances that "although a prior award of disability benefits is not dispositive, the records that supported that determination are relevant in determining current eligibility for benefits." ALJ Zanotto, on the contrary, did not award Benjamin R. benefits. Accordingly, *Osborne* and *Wooten* do not speak to this situation.

An ALJ must consider all medical and non-medical evidence before him. *See Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). However, Ruiz did not obtain re-opening of the prior decision. Therefore, ALJ Zanotto's decision was not evidence in this case.

It was an administrative decision in a prior case. Benjamin R. was entitled to submit to the ALJ in this case documents which he submitted in his prior case. *See McKean v Colvin*, 150 F. Supp.3d 406, 413 (M.D. Pa. 2015). However, he did not do so. The ALJ was not tasked with reviewing all of Benjamin R.'s prior cases and hunting down records cited therein, and he cannot reasonably be criticized for failing to do so.

B.      *The ALJ's Evaluation of the Evidence*

Despite the foregoing, there is some merit to Benjamin R.'s argument that the ALJ's view of the evidence was selective. It was, in fact, inaccurate in some important respects. As noted above, the ALJ wrote at stage two of the sequential evaluation: "Although psoriatic arthritis, hypertension, herniated discs at L4-5, bowel obstruction and surgery for hernia repair, hypothyroidism, glaucoma, vertigo and depression are alleged by the claimant, there is no evidence in the file to support these conditions as medically determinable impairments as the conditions have not been diagnosed on the basis of any medically acceptable clinical or laboratory diagnostic technique." Record at 17.

It is not particularly concerning that the ALJ mistakenly included in this paragraph three impairments which he had just found to be severe – i.e., psoriatic arthritis, herniated discs, and depression. Because the ALJ ultimately treated these impairments as severe, discussing them at length in his decision, this error was harmless. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Of more concern is the fact that the ALJ wrongly indicated that "surgery for hernia repair" and glaucoma had "not been diagnosed on the basis of any medically acceptable clinical or laboratory diagnostic techniques." *Id*. On the contrary, Benjamin R. underwent a hernia repair surgery on March 6, 2023. Record at 2068. This was not his first hernia repair surgery. *Id*. ("asymmetric incision from previous open incisional hernia repair"). Glaucoma was

6

diagnosed sometime in 2019, and was treated with prescription eyedrops during the relevant period.  Record at 2242 (October 6, 2022, note from Family Eye Group:  "Patient has glaucoma he was diagnosed 3 years ago").

It is not clear that the ALJ's error was harmless, at least as to the hernia surgery. Benjamin R. testified at his hearing that he had undergone four or five abdominal operations, and could no longer bend over with comfort.  Record at 46, 50.  Yet the ALJ found he could occasionally stoop and crouch.  Record at 19.

Moreover, after discussing Benjamin R.'s medical records the ALJ wrote, apparently focusing on his degenerative disc disease:  "His treatment has been largely conservative despite his claims regarding severity and intensity as he has had no recent surgical interventions to treat his condition."  Record at 22.  In fact, on August 2, 2022, Benjamin R. had an epidural spinal cord stimulator implanted in his thoracic spine.  Record at 773.  This was certainly a surgical procedure even though it did not involve operating on the spine, and cannot be described as conservative treatment.  Further, Benjamin R. underwent other surgeries in the relevant period to treat conditions other than his degenerative disc disease:  as discussed, he underwent a hernia repair on March 6, 2023, and in August, 2023, he had a pacemaker implanted, following a suspected stroke.[1]  Record at 2253.

The ALJ's factual errors and incomplete statements, taken together, obscure the complexity and intensive nature of Benjamin R.'s medical treatment in the relevant period.  As a result, they undermine the reliability of the ALJ's decision as to Benjamin R.'s physical limitations.  Even though the ALJ undoubtedly cited some evidence which supported his conclusion, such as physical examinations showing a normal range of motion and full muscle

---

[1] A definitive diagnosis of stroke was not possible because Benjamin R. could not have an MRI due to the presence of his spinal cord stimulator.  Record at 2253.

7

strength (*see* Record at 21-2), it is impossible to say with certainty that his RFC assessment was supported by substantial evidence.

It is important to note that, given his age and other characteristics, Benjamin R. would be entitled to a finding of disability if he was limited to sedentary work. 20 C.F.R. Part 404, Subpart P, Appendix 2 at §201.09. Thus, it was crucial for the ALJ to make a well-supported decision as to whether Benjamin R. was able to perform the requirements of light work.

As explained by the Social Security regulations, although "light" work does not involve lifting great weights, it typically involves other significant forms of exertion:

> **Light work**. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §404.1567(b). The Agency has further explained: "[M]ost light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday." SSR 83-14, 1983 WL 31254 (S.S.A. 1983). Thus, to find the ALJ's decision well-supported, it is necessary to have confidence in his analysis of the evidence regarding Benjamin B.'s degenerative disc disease, as well as any orthopedic and neurological conditions.

Benjamin R. was not sent for an independent medical examination as part of the current case. Although it is possible that he was examined by an independent medical expert as part of one or more of his earlier applications for benefits (his attorney explains that this is his fourth application), it is apparent from his medical procedures and other treatment that his health situation continued to evolve.

8

On these facts, I find that remand is necessary for a systematic analysis of the evidence regarding Benjamin R.'s physical impairments.  I will direct that the Agency obtain an independent consulting medical expert to review Benjamin R.'s relevant medical records and issue a report as to his probable physical functional capacities during the relevant period.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be granted in part and the matter remanded to the Agency for review of the records pertaining to Benjamin R.'s physical impairments by an independent consulting medical expert.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE

9